Donald A. DYSON, Stephen F. Kesler, W. T. Bissell, Ronald McClain, Donald L. Oborn, and Elmo Walker, Plaintiffs and Appellants,

v.

AVIATION OFFICE OF AMERICA, INC., a Texas Corporation, and Ranger Insurance Company, a New York Corporation, and Kenneth R. Shannon, Defendants and Respondents.

AVIATION OFFICE OF AMERICA, INC., a Texas Corporation, and Ranger Insurance Company, a New York Corporation, Third-Party Plaintiffs and Respondents,

v.

Donald A. DYSON, LeRoy F. Dyson and L. F. Dyson & Associates, Inc., a Nevada Corporation, Third-Party Defendants and Appellants.

Stephen F. KESLER, W. T. Bissell, Ronald McClain, Donald L. Oborn and Elmo Walker, Plaintiffs, Cross-Claimants and Respondents,

v.

Donald A. DYSON, LeRoy F. Dyson and L. F. Dyson & Associates, Inc., a Nevada Corporation, Third-Party Defendants and Appellants.

No. 15661.

Supreme Court of Utah.

March 27, 1979.

H. Wayne Wadsworth of Watkiss & Campbell, Wallace R. Lauchnor of Moffat, Welling & Paulsen, R. Clark Arnold of Reynolds & Arnold, Salt Lake City, for plaintiffs and appellants.

Stuart L. Poelman of Snow, Christensen & Martineau, Raymond A. Hintze of Walker & Hintze, Salt Lake City, for defendants and respondents.

HALL, Justice:

Appeal from a judgment which held that Ranger Insurance Company ("Ranger") and its underwriter, Aviation Office of America ("AOA") were not liable on a contract of insurance, but that the insurance agent was liable for the loss of an aircraft.

On March 18, 1975, five individuals (Dyson, Kesler, Bissell, McClain and Oborn) purchased a 1968 Cessna aircraft for $27,000 which was financed by Walker Bank & Trust Company. One of the owners (Dyson) was an insurance agent and partner of L. F. Dyson & Associates, a Nevada corporation. Dyson was commissioned by the other owners to obtain insurance on the aircraft. On March 21, 1975, Dyson submitted an Application For Aircraft Insurance to AOA, an underwriting group which specializes in writing aviation insurance for approximately 65 insurance companies. Dyson had been writing aviation coverage through AOA since 1968 when an Agency Agreement was executed which included the following provision:

> Nothing herein shall be construed as authorizing the Agent to commit or bind the Company to any liability without prior approval of Aviation Office of America, Inc.

AOA has agency contracts with some 5,000 agents throughout the country, only six of whom have written authority to bind AOA and its insurers without prior approval of AOA.

The evidence adduced at trial included the following. The original policy with Ranger was issued on April 1, 1975, effective as of March 26, 1975[1] for a one-year period, with Dyson designated as the insured. Dyson and one Breeze were named pilots, with "additional pilots to be added as they qualify." The first steps to change the policy occurred on July 21 when AOA received a letter that they were to change the use to include "rental" of the aircraft and to add Kesler as a named pilot. Although not issued until September 17, the endorsement was made effective July 22 as requested, because of the oral binder given by Dougherty, an officer of AOA. Then on August 26, it was requested that Bissell be added to the policy. After receiving the requested pilot information form, the endorsement was issued on December 2, effective as of November 13. (No additional premium was charged for the addition of Bissell to the policy.) On December 4, Dyson requested that Ferguson be added and that Breeze be deleted from the policy. The endorsement was issued as of December 4, there being no additional risk or premium involved.

On about December 1, 1975, Dyson sold his interest in the plane on a contract to one Shannon whereby Shannon agreed to assume Dyson's obligation to Walker Bank. Dyson's partners in the ownership of the plane voiced concern about Shannon's qualifications and ability but were assured by Dyson that Shannon was licensed and that they were protected in their investment by insurance coverage.

On December 8, 1975, one Cartwright, an employee of Dyson, forwarded an office memorandum to AOA in Dallas, Texas, enclosing pilot experience information on Shannon and stating he was to be included as a pilot under the policy and requesting

---

1. The application was dated March 22, the accompanying memorandum requesting it be made effective March 21. It was received on March 26, at which time a representative of AOA telephoned the Dyson agency and quoted a premium. Dyson approved the premium and AOA issued a binder.

an endorsement to this effect. An employee of AOA, one Broughton, testified that on December 15, 1975, she mailed the following reply:

This risk has reached a flying club exposure. To add this pilot it will be a fully earned premium of $100. Please advise if you want him added.

Both Cartwright and Dyson denied ever receiving or seeing this response, but in any event, no endorsement adding Shannon's name to the policy was ever issued by AOA.

On February 1, 1976, the plane crashed on landing with Shannon at the controls. When the proof of loss or claim was filed, AOA advised Dyson by letter that there was no coverage under the policy because Shannon was not a named pilot under the terms of the policy nor did he qualify under the open pilot endorsement. The letter further stated that Dyson had warranted under the application for aircraft insurance that he was the sole owner, but that the records of the F.A.A. and their own further investigation indicated that this information was incorrect.

Plaintiffs Dyson, Kesler, Bissell, McClain, Oborn, and Walker (McClain's successor in interest) then brought suit against AOA and Ranger for breach of contract in failing to properly issue an insurance policy covering the loss. Plaintiffs also sued Shannon for negligence in crashing the airplane.[2]

A third-party complaint was filed by AOA and Ranger against plaintiff Dyson and his insurance agency alleging that Dyson and his agency should indemnify the company for any money it may be required to pay to the plaintiffs caused by Dyson's negligence, breach of duty, or intentional misrepresentation of facts.

Dyson and his agency counterclaimed against Ranger and AOA alleging that they had impliedly provided coverage to the plaintiffs and had also committed negligence in failing to advise Dyson that no coverage was provided.

Finally, plaintiffs Kesler, Bissell, McClain, Oborn, and Walker filed a cross-claim and third-party complaint against Dyson and his agency alleging that Dyson had breached his contract to obtain insurance for the other plaintiffs.

The trial court, sitting without a jury, found in favor of AOA and Ranger and against the plaintiffs, no cause of action, on the complaint. However, it did enter judgment in favor of the other plaintiffs against Dyson on their cross-claim and third-party complaint in the amount of $18,211.20 [3] plus interest. Finally, the trial court entered judgment, no cause of action, in favor of AOA and Ranger against Dyson and his agency on the Dyson cross-claim against the insurance carrier.

On appeal, Dyson and his agency seek reversal of the trial court's decision or, in the alternative, remand for a jury trial. The basic thrust of the points Dyson raises on appeal is that the Agency Agreement (as it relates to Dyson's authority to bind AOA) had been altered by the parties' course of dealing in that AOA would backdate its policy endorsements. The questions raised are therefore factual ones. In a lengthy memorandum decision the trial court made the following observations:

I have considered the testimony . . . and do not find the facts support counsel's contention that a course of dealing was established from which it can be found that coverage was binding upon submission of the pilot information forms. Some of the policies relied on to show such course of dealing did not deal with adding pilots to policies and in some the effective date was made in conformity with a specific request for making the effective date that of a specific date. The thread which Dysons seek to grasp to support their contention that a course of dealing was established does not run through all of the policy cases upon which evidence was given.

2. Default judgment was entered against Shannon, but that judgment is not at issue in this appeal.

3. Damages computed as four-fifths of the value of the aircraft ($27,000) less the salvage value ($4,236).

■ The trial court therefore found that there was no course of dealing established as would authorize Dyson to bind AOA. We are precluded from substituting our judgment for that of the trial court on these issues of fact, as its findings and judgment are based on substantial, competent, admissible evidence.[4] The evidence indicated *supra,* relating to changes in this specific policy is totally consistent with the trial court's decision.

Other insurance transactions unrelated to the policy in question are also relied upon by Dyson as showing the asserted course of conduct. One such transaction includes coverage of one Rex Anderson wherein an endorsement for substitution of aircraft was made effective May 5, 1972, although not requested until May 22, 1972. Dougherty testified that the policy allowed for a 30-day substitution clause. Another involves the policy of Norman Anderson wherein only a date was corrected. Other policies involving Walsh, Rich and Reynolds were all shown to have been backdated to the time an oral *binder by AOA* to the coverage had been made. The evidence may therefore be construed as being consistent with the trial court's ruling which we are not disposed to upset.

■ Dyson's claim that absent testimony that the Broughton memorandum was actually deposited in the United States mail there can be no presumption that it was received is also a factual matter. Although an officer of AOA did testify that he did not believe Broughton would be the person who would actually place the memorandum in the mail box, Broughton testified that after preparing the memorandum she "mailed it back to the agent." Again the court was faced with a factual determination which was resolved in favor of AOA.

■ The record also supports the conclusion that the claim that the trial court erred in denying Dyson's right to trial by jury is without merit. The case was set for trial on September 19, 1977. On September 14, Dyson served counsel for the other parties with copies of the demand for jury trial, which was then filed with the court on September 15. The other parties then moved to strike the demand, which motion was granted on September 16. The demand clearly did not comply with the rule[5] that it must be made 10 days prior to trial and there was no showing of an abuse of discretion on the part of the trial court.[6]

■ Plaintiffs-owners who were awarded judgment below seek additional relief on appeal. They assert that Dyson's appeal is frivolous and brought solely for delay, and seek damages in the amount of 25% of the original judgment. This is allegedly to offset the difference between the interest accruing since judgment (8%) and the interest rate charged by Walker Bank on the original loan (10.58%), as well as to compensate them for attorney fees on appeal. We are convinced that the appeal was not brought "solely for delay"[7] and therefore deny the additional damages. Also plaintiffs-owners claim of trial court error in refusing to award them attorney's fees below is without merit in view of the principle that such award must be based on an express contractual or statutory duty.[8]

We therefore affirm the trial court's decision in its entirety. Costs to AOA and Ranger.

CROCKETT, C. J., and MAUGHAN, WILKINS and STEWART, JJ., concur.

---

4. *Fisher v. Taylor,* Utah, 572 P.2d 393 (1977); *Griffeth v. Zumbrennen,* Utah, 577 P.2d 129 (1978).

5. Rule 5.2, Rules of Practice in the District Courts of the State of Utah.

6. In regard to the court's discretion in such matters, see *Board of Education of Salt Lake City v. West,* 55 Utah 357, 186 P. 114 (1919).

7. Rule 73(*1*), Utah Rules of Civil Procedure.

8. *Stubbs v. Hemmert,* Utah, 567 P.2d 168 (1977).